IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RANDOLPH JACKSON,

     Petitioner,

v.                                   CASE NO. 1:17-cv-99-MW-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

     Respondent.

_____/

## REPORT & RECOMMENDATION

Petitioner initiated this case by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2006 conviction in Alachua County for aggravated battery on a detainee. (ECF Nos. 1, 20.) Respondent filed a motion to dismiss the petition as untimely. (ECF No. 25.) Petitioner filed a response, ECF No. 30, and the motion is therefore ripe for review.

### I.  State-Court Proceedings

In November 2004 the State charged Petitioner by second amended information with sexual battery by threat of force or violence likely to cause serious personal injury. (Ex. A at 31–32.) Following a jury trial on December 14, 2005, the jury found Petitioner guilty of aggravated assault.

(Ex. B at 233–34, 256.) Petitioner was sentenced that same day as a violent career criminal to 15 years in prison, with a mandatory 10 years of imprisonment prior to release. (*Id.* at 259–60.)[1]

Petitioner appealed to the First District Court of Appeal ("First DCA"). (*Id.* at 268; Ex. G.) The First DCA *per curiam* affirmed without written opinion on December 11, 2006, and the mandate followed on December 28, 2006. (Ex. I.)

Petitioner then filed a Rule 3.800(a) motion to correct illegal sentence on January 19, 2007. (Ex. J at 1–9.) The Court denied this motion on June 7, 2007, and denied his motion for rehearing on August 13, 2007. (*Id.* at 29–30, 50–59.) Petitioner appealed to the First DCA. (*Id.* at 60–71; Ex. K.) The First DCA *per curiam* affirmed without written opinion on March 10, 2008, and the mandate followed on May 6, 2008, after the First DCA denied Petitioner's motion for rehearing. (Exs. M, N.)

Petitioner then filed a Rule 3.850 motion for post-conviction relief on June 4, 2008, which he amended on June 11, 2008. (Ex. O at 1–20.) The court denied in part and dismissed the motion in part on February 24,

---

[1] The record also contains a verdict from February 17, 2006, where Petitioner was found guilty of battery on a detainee, which resulted in a 10-year sentence as a habitual felony offender on March 30, 2006. (Ex. S at 30–35.)

2010, but the court provided Petitioner an opportunity to amend ground four. (*Id.* at 22–27.) After considering the motion, amended motion, and the record, the court issued a final order denying Petitioner's motion for post-conviction relief on September 2, 2010. (*Id.* at 67–71.) Petitioner then appealed to the First DCA. (*Id.* at 121–22.) The First DCA *per curiam* affirmed without written opinion on January 18, 2011, and the mandate followed on February 15, 2011. (Ex. P.)

While Petitioner's Rule 3.850 motion was pending, Petitioner filed a Rule 3.800(a) motion on May 27, 2010. (Ex. Q.) The court denied his motion on September 2, 2010. (Ex. R.)

After the mandate issued regarding Petitioner's Rule 3.850 motion, Petitioner filed a "Motion for Relief from Judgments" on December 5, 2011. (Ex. S at 1–12.) The court construed Petitioner's motion as a second motion for post-conviction relief under Rule 3.850 and denied the motion on December 28, 2011, as facially insufficient, untimely, and, in the alternative, as without merit. (*Id.* at 17–18.) Petitioner appealed to the First DCA, and the First DCA *per curiam* affirmed without written opinion on May 7, 2012. (*Id.* at 40; Exs. T, V.) The mandate followed on July 6, 2012, after the First DCA denied Petitioner's request for rehearing. (Exs. V, W.)

Petitioner then filed a petition for writ of habeas corpus in state court on September 8, 2012. (Ex. X at 4–11.) The trial court construed his petition as a motion for post-conviction relief under Rule 3.850 and denied it as untimely on November 20, 2012. (*Id.* at 16–17.) The trial court then denied Petitioner's motion for rehearing on December 11, 2012. (*Id.* at 23–31.) The First DCA *per curiam* affirmed without written opinion on March 4, 2013, and the mandate followed on April 2, 2013. (*Id.* at 33–34; Ex. Y.)

Petitioner then filed another Rule 3.800(a) motion on June 3, 2012. (Ex. Z.) The trial court denied this motion on June 11, 2013, and Petitioner did not appeal this decision. (Ex. AA.) He then filed yet another Rule 3.800(a) motion on September 23, 2013, which the court denied on October 1, 2013. (Ex. BB at 1–9, 18–20.) Petitioner appealed this decision, and the First DCA *per curiam* affirmed without written opinion on May 1, 2014, with the mandate following on July 1, 2014. (*Id.* at 41–43; Exs. CC–FF.)

Next Petitioner filed another Rule 3.850 motion on September 30, 2014. (Ex. GG at 1–8.) The trial court denied this motion, construing it as filed under Rule 3.800(a), on October 10, 2014, and denied Petitioner's

motion for rehearing on November 12, 2014. (*Id.* at 46–80.) Petitioner appealed to the First DCA, and the First DCA *per curiam* affirmed without written opinion on February 26, 2015. (*Id.* at 81; Exs. HH–JJ.) Petitioner filed a motion for rehearing and written decision, which was denied. (Ex. KK.) The mandate followed on May 4, 2015. (Ex. JJ.)

Also on September 30, 2014, Plaintiff filed another Rule 3.800(a) motion. (Ex. LL.) The trial court denied this motion on October 10, 2014, and then denied rehearing on November 13, 2014. (Ex. GG at 10–45.) Petitioner did not appeal this decision.

Petitioner persisted by filing another Rule 3.800(a) motion on June 23, 2015. (Ex. MM at 1–8.) The court construed this motion as a motion under Rule 3.850 instead and denied the motion on June 30, 2015. (*Id.* at 10–12.) Petitioner appealed, and the First DCA *per curiam* affirmed without written opinion on October 28, 2015, with the mandate following on November 24, 2015. (*Id.* at 22; Exs. NN–OO.)

Next Petitioner filed a state petition for writ of habeas corpus in the trial court on December 15, 2015. (Ex. PP.) The court dismissed the petition on January 19, 2016. (Ex. QQ.) Petitioner appealed, and the First DCA dismissed his case on April 22, 2016, due to Petitioner's failure to

comply. (Ex. RR.) But Petitioner had filed separate state petitions for writ of habeas corpus in the First DCA on March 2, 2016. (Exs. SS–WW.) The First DCA consolidated his case and then *per curiam* dismissed his petitions as unauthorized on July 6, 2016. (Ex. VV; ZZ.) Petitioner was also barred from future *pro se* filings in the First DCA as a result of his many filings. (Ex. ZZ.)

Not to be deterred Petitioner filed another petition for writ of habeas corpus in state court on September 2, 2016. (Ex. AAA at 4–40.) The state court dismissed this petition on November 14, 2016. (*Id.* at 41–43.) Petitioner appealed, but Petitioner then voluntarily dismissed his appeal. (Exs. BBB, CCC.)

Petitioner then provided his first federal habeas petition to prison officials for mailing on April 14, 2017. (ECF No. 1.)

## II.  One-Year Limitation Period

Petitions filed after April 24, 1996, are governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA created a limitations period for petitions for writ of habeas corpus brought pursuant to § 2254:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). However, the AEDPA tolls the one-year limitation period for the time during which a properly filed application for State postconviction or other collateral review is pending, and may be equitably tolled in appropriate "extraordinary circumstances." § 2244(d)(2); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000).

## III.  Discussion

## A. The petition is untimely.

As an initial matter, because Petitioner filed his petition after April 24, 1996, the AEDPA governs his petition. The petition is, therefore, subject to

the AEDPA's one-year limitation period.

To determine whether a petition was timely filed within one year after the conviction became final, the court must determine (1) when the prisoner filed the federal collateral petition, and (2) when the prisoner's judgment of conviction became final. *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999).

With respect to the first *Adams* prong, under the mailbox rule a *pro se* prisoner's collateral petition is filed on the date it is delivered to prison authorities for mailing. *Adams*, 173 F.3d at 1341. Accordingly, because Petitioner provided his petition to prison officials for mailing on April 14, 2017, he is deemed to have officially filed his petition on April 14, 2017. (ECF No. 1.)

As to the second *Adams* prong, a judgment of conviction becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted. *Atkins v. United States,* 204 F.3d 1086, 1089 n.1 (11th Cir. 2006). A petitioner, however, has a 90-day period in which to file a certiorari petition with the Supreme Court of the United States before a judgment of conviction is deemed to have become final. *Nix v. Sec'y for the Dep't of Corrections*, 393 F.3d 1235, 1237 (11th Cir. 2004); *Kaufmann v.*

*United States*, 282 F.3d 1336, 1338 (11th Cir. 2002).

In this case, Petitioner appealed his conviction, and the First DCA *per curiam* affirmed the conviction without written opinion on December 11, 2006. (Ex. I.) Petitioner therefore received the benefit of the 90-day period to file a certiorari petition because, in light of the *per curiam* affirmance, the state appellate court was the highest court in which he could seek review. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("[T]he entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review . . . .")  Accordingly, Petitioner's judgment of conviction would have become final on March 12, 2007, upon the expiration of the 90-day period, but for the fact that he began challenging his sentence and conviction prior to that date.

Before Petitioner's conviction becoming final, Petitioner filed his first *pro se* motion to correct illegal sentence in the state court on January 19, 2007. (Ex. J at 1–9.) The state court denied this motion on June 7, 2007, and petitioner appealed to the First DCA after his motion for rehearing was denied. (*Id.* at 29–30, 50–71; Ex. K.) The First DCA *per curiam* affirmed without written opinion on March 10, 2008, and the mandate followed on

May 6, 2008. (Exs. M, N.)  Accordingly, Petitioner's one-year limitations period under the AEDPA began to run on May 6, 2008.

After May 6, 2008, Petitioner's time period ran for 28 days until he filed his *pro se* motion for post-conviction relief under Rule 3.850 on June 4, 2008. (Ex. O at 1–20.) After he amended his motion, the state court denied the motion by final order on September 2, 2010. (*Id.* at 67–71.) Petitioner then appealed, and the First DCA *per curiam* affirmed without written opinion on January 18, 2011, with the mandate following on February 15, 2011. (*Id.* at 121–22; Ex. P.)[2]  Petitioner's one-year limitations period, therefore, began to run again starting on February 15, 2011.

Petitioner's next state-court filing was a "Motion for Relief from Judgments," which he filed on December 5, 2011. (Ex. S at 1–12.) This motion was construed as his second motion for post-conviction relief under Rule 3.850, and it was dismissed as facially insufficient, untimely, and in the alternative without merit on December 28, 2011. (*Id.* at 17–18.) Petitioner appealed, and the First DCA *per curiam* affirmed without written

---

[2] During the pendency of the ruling on Petitioner's first Rule 3.850 motion and the appeal, Petitioner filed a Rule 3.800(a) motion, which was denied on September 2, 2010. (Exs. Q, R.) Petitioner did not appeal. Because this motion was resolved prior to the issuance of the First DCA's mandate regarding his Rule 3.850 motion, it does not affect Petitioner's one-year time period.

opinion on May 7, 2012. (*Id.* at 40; Exs. T, V.) The mandate followed on

July 6, 2012, after the First DCA denied his request for rehearing. (Ex. V,

W.)

However, because this motion was found to be insufficient and

untimely, it was not "properly filed" within the meaning of 28 U.S.C. §

2244(d)(2) and therefore did not toll the one-year period. *See Pace v.*

*DiGuglielmo*, 544 U.S. 408, 413–17 (2005) ("[W]e hold that time limits, no

matter their form, are 'filing' conditions. Because the state court rejected

petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is

not entitled to statutory tolling under § 2244(d)(2)."); *Sweet v. Sec'y, Dep't*

*of Corr.*, 467 F.3d 1311, 1318 (11th Cir. 2006) ("[W]hen a state court

unambiguously rules that a post-conviction petition is untimely under state

law, we must respect that ruling and conclude that the petition was not

'properly filed' for the purposes of § 2244(d)(2), regardless of whether the

state court also reached the merits of one of the claims.").

Because Petitioner's "Motion for Relief from Judgments" did not toll

the one-year limitations period, Petitioner's one-year period continued to

run un-tolled from February 15, 2011, for the remaining 337 days.[3]

Petitioner's one year statute of limitations thus expired on January 18,

2012. Therefore, because the one-year limitations period expired prior to

the date he filed his petition, the petition is untimely and should be

dismissed. *See* 28 U.S.C. § 2244(d)(1).

   Once the statute of limitations period expired on January 18, 2012,

nothing else Petitioner did in state court—including his multiple motions

under Rule 3.800(a) and Rule 3.850 as well as his state petitions for writ of

habeas corpus—tolled the statute of limitations period further even if they

were properly filed applications for post-conviction or collateral review.[4]

*See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("Under

§2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in

order to toll the limitations period. A state-court petition . . . that is filed

---

   [3] February 11, 2011, is the date on which the First DCA issued its mandate regarding the denial of Petitioner's Rule 3.850 motion. And 337 days were remaining in the one-year period because 28 days had previously elapsed.

   [4] Notably, the only two motions Petitioner filed in state court after this date included a hand-written Rule 3.800(a) motion, which the court denied because a Rule 3.800(a) motion was not the proper way to raise his claim, and a Motion for Due Process Cost of Private Investigator. (ECF No. 42-8 at 53–61; ECF No. 42-9 at 2–4, 45–102; ECF No. 42-12 at 43, 45–46.) Neither of these tolled the limitations period because they did not constitute properly filed applications for post-conviction or other collateral review.

following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). In sum, because Petitioner did not file his first petition in this Court until April 14, 2017, almost five years after the statute of limitations had expired, Petitioner's federal habeas petition is untimely.

## B. Petitioner is not entitled to equitable tolling.

In his petition, Petitioner does not attempt to argue the timeliness of his petition. Instead, he says the following: "Timeliness is excused pursuant to 28 U.S.C. § 2254(d)(1)(B); § 2244(d)(2)." (ECF No. 20 at 20.)

Under § 2244(d)(1)(B),[5] which Petitioner alleges applies, "[t]he limitation period shall run from the latest of . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Petitioner, however, has failed to actually allege the existence of any state-created impediment that prevented him from timely filing his petition.

Petitioner's only mention of a state impediment is in the section

---

[5] There is no 28 U.S.C. § 2254(d)(1)(B). Accordingly, the Court construes this as § 2244(d)(1)(B).

requesting Petitioner to explain the reasons for not previously presenting

his claims in state court. He states, "All six grounds are precluded from

redress due to State's impediment. Fla. R. Crim. P. 3.800, 3.820, 3.850 do

not allow claims to be revisited absent newly discovered evidence. They

are reviewable 1st tier in § 2254 pursuant to Maples." (ECF No. 20 at 18.)

These procedural rules, however, do not constitute an impediment

that prevented him from filing his petition, as 28 U.S.C. § 2244(d)(1)(B)

requires; they merely explain Petitioner's failure to exhaust his claims in

state court. *See Sallie v. Humphrey*, 789 F. Supp. 2d 1351, 1358 (M.D. Ga.

2001) (noting that the court has found "no authority holding that a state

court procedural rule can be considered an 'impediment' under §

2244(d)(1)(B)"); *see also Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir.

2002) ("[T]he plain language of the statute makes clear that whatever

constitutes an impediment must *prevent* a prisoner from filing his

petition.").

Because Petitioner has failed to allege the existence of any state

action that prevented him from filing his petition in this Court, 28 U.S.C. §

2244(d)(1)(B) does not apply for the purposes of determining the start of

Petitioner's one-year statute of limitations period. Therefore, the

appropriate trigger for Petitioner's one-year period is § 2244(d)(1)(A), "the date on which the judgment became final." And as discussed above in great detail, Petitioner's petition is untimely based on the application of that statute.

Petitioner also erroneously says his timeliness is excused under 28 U.S.C. § 2244(d)(2). Section 2244(d)(2), however, provides only that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." But again as discussed above, even after tolling the limitations period during the time of pending *properly filed* applications for post-conviction or other collateral review, Petitioner's petition is still untimely.

Moreover, although Petitioner makes no argument that he is entitled to equitable tolling, it is clear that Petitioner is not entitled to such tolling. A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). "[T]he circumstances of a case must be 'extraordinary' before equitable tolling

can be applied . . . ." *Id.* at 652. "The petitioner bears the burden of showing that equitable tolling is warranted," *Paulcin v. McDonough*, 259 F. App'x 211, 212 (11th Cir. 2007), and the petitioner must show "*both* extraordinary circumstances and due diligence." *Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004.)  Notably, "equitable tolling is an extraordinary remedy [that] is limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (internal quotation marks omitted).

In this case, Petitioner has failed to demonstrate the requisite extraordinary circumstances and due diligence to warrant equitable tolling of his AEDPA statute of limitations. The record in Petitioner's case reveals he filed a multitude of state post-conviction motions. Based on this extensive history of filing motions, there is little doubt that Petitioner could have filed a § 2254 petition in this Court prior to the expiration of the one-year period. But he did not.

The Supreme Court has stated that a petitioner is not entitled to equitable tolling when "a litigant [is] responsible for [his] *own* delay." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). Because Petitioner's delay was the result of his own doing, he is not entitled to equitable tolling. Therefore, the Petition is untimely and

should be dismissed.

**C. Petitioner has failed to show actual innocence.**

In his response to Respondent's motion to dismiss, Petitioner states

that, although his petition is untimely, he has been subjected to a manifest

miscarriage of justice based on his wrongful conviction. Because Petitioner

contends that he is actually innocent, Petitioner argues that the Court

should review his petition despite its untimeliness to avoid injustice. (ECF

No. 30.)

More specifically, Petitioner contends that he has maintained his

innocence and that "he has presented new facts (Grounds (1) through (6))

in his 2254 petition that raise sufficient doubt about his guilt to undermine

confidence in the result of the trial." Further, he states that "his conviction

was obtained in violation of the 5th, 6th, and 14th Amendments to the U.S.

Constitution and that failure to consider the claim(s) will result in a

fundamental miscarriage of justice." (*Id.* at 2–3.)

"[A]ctual innocence, if proved, serves as a gateway through which a

petitioner may pass whether the impediment is a procedural bar . . . or, as

in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*,

569 U.S. 383, 386 (2013). But "tenable actual-innocence gateway pleas

are rare: '[A] petitioner does not meet the threshold requirement unless he

persuades the district court that, in light of the new evidence, no juror,

acting reasonably, would have voted to find him guilty beyond a reasonable

doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Further,

"[f]or purposes of the miscarriage-of-justice exception, 'actual innocence'

means factual innocence, not mere legal insufficiency." *Jackson v.*

*McLaughlin*, No. 17-11474-B, 2017 WL 4844624, at *1 (11th Cir. July 12,

2017) (citing *McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir.

2011)).

Here, Petitioner has failed to make any kind of showing that he is

actually innocent of his underlying conviction based on new evidence that

was not available at the time of trial. Petitioner's only support for his claim

of actual innocence involves the grounds he raised in his petition and the

facts he provided in support thereof.

In his petition, Petitioner raises the following grounds for relief: (1)

incorrect instruction on elements of offense, in violation of the 5th, 6th, and

14th Amendments; (2) ineffective assistance of counsel for failure to

challenge "variance," in violation of the 5th, 6th, and 14th Amendments; (3)

ineffective assistance of counsel for failure to investigate, in violation of the

5th, 6th, and 14th Amendments; (4) ineffective assistance of counsel

based on failure to request nullification jury instruction, in violation of 5th, 6th, and 14th Amendments; (5) violations of due process and double jeopardy under the 5th, 8th, and 14th Amendments; and (6) violation of due process for denial of jail credits under the 5th and 14th Amendments. (ECF No. 20.)

Notably, in none of these grounds for relief did Petitioner actually provide any *new* evidence to support a finding that no reasonable jury would have found him guilty beyond a reasonable doubt. In short, Petitioner failed to show his factual innocence, and thus the miscarriage-of-justice or actual-innocence exception does not apply to allow the Court to review Petitioner's untimely petition.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus, ECF No. 25, should be **GRANTED**, and the petition for writ of habeas corpus, ECF No. 20, should be **DISMISSED**.

2.    A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 11th day of June 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party**

fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.